# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| ANTHONY C. WAGNER, ) | Civil Action No. 7:12-cv-00441 | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| RANDAL BARNETTE, <u>et al.</u>, ) | By:    Hon. Michael F. Urbanski | |
|     Defendants. ) |         United States District Judge | |

Anthony C. Wagner, a federal inmate proceeding pro se, filed a verified Complaint[1] pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. Wagner named as defendants Randal Barnette, a correctional officer at the United States Penitentiary in Lee County, Virginia ("USP Lee"); C. Zych, Warden of USP Lee; and the Director of Health Services at USP Lee. Wagner subsequently amended the Complaint to withdraw the Bivens claims against the Director of Health Services and all FTCA claims.[2] Officer Barnette and Warden Zych filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," and Wagner responded to the court's Roseboro[3] notice, making the matter ripe for disposition. After reviewing the record, the court grants defendants' motion because Wagner did not file his suit within the limitations period. Moreover, his suit fails to state a claim against Warden Zych.

---

[1] Wagner filed a form complaint for a civil rights action via 42 U.S.C. § 1983 that included a verification statement and referenced the typed Complaint pursuant to Bivens. The court considers Wagner's signed verification statement, pursuant to 28 U.S.C. § 1746, to be incorporated by reference to the typed Complaint that describes the Bivens claims and defendants. See Fed. R. Civ. P. 8(e) (stating pleadings must be construed so as to do justice); Fed. R. Civ. P. 10(c) (permitting adoption by reference); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (permitting liberal construction of pro se pleadings); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (noting a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes when verified allegations are based on personal knowledge).

[2] Consequently, the Director of Health Services was terminated as a defendant.

[3] See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

**I.**

The record reflects the following facts in a light most favorable to Wagner. On September 11, 2010, Officer Barnette moved Wagner into another inmate's cell at USP Lee. Once inside, the inmate started to attack Wagner, Wagner saw Officer Barnette look inside the cell, and the assailant yelled at Officer Barnette to lock the cell door. Officer Barnette allegedly saw the assailant standing over and attacking Wagner, who was bleeding and defenseless on the floor, but Officer Barnette did not intervene. Instead, Officer Barnette locked the door, left Wagner to be attacked, returned later, and escorted Wagner to another cell without requesting medical care for Wagner's unspecified injuries to his head, face, and upper body.

The next day, an inmate informed USP Lee staff that Wagner had been injured while playing basketball. Although Wagner had not yet complained of an injury, USP Lee staff escorted Wagner to the medical department for an evaluation. A nurse's medical assessment revealed that Wagner had dark discoloration around both eyes, a red right eyeball, bilateral swelling of his nose and cheeks, abrasions inside his mouth, redness to his left cheek, and dried blood inside his left nostril. Wagner told the nurse that his injuries occurred when he "got elbowed" and "got hit good" while playing basketball. The nurse advised Wagner to apply ice to the areas, immediately report any visual changes, take over-the-counter Motrin for pain, and report to sick call as needed. The nurse noted in the medical report that Wagner's injuries were inconsistent with being elbowed while playing basketball.

After leaving the medical department, USP Lee staff escorted Wagner to Lieutenant Ousley's office for photographs and an interview. Wagner told Lt. Ousley that he was playing basketball when another inmate accidently struck him with an elbow and landed on him after attempting a rebound. He did not tell Lt. Ousley or any other staff that another inmate attacked

him in a cell the prior day or that Officer Barnette observed the attack and did not intervene. Lt. Ousley believed that Wagner had been assaulted at an earlier time and not on the basketball court because Wagner already had black eyes during the interview and because security camera recordings did not show Wagner on a basketball court at the alleged time. Lt. Ousley concluded that the inmate who reported Wagner's injuries, and who was a leader of a white-inmate faction in the prison, attacked Wagner, but Wagner refused to admit that any attack occurred. Staff immediately moved Wagner into segregation and then transferred him to the United States Penitentiary in Coleman, Florida, on November 30, 2010.

Wagner alleges that Officer Barnette violated the Eighth Amendment by being deliberately indifferent to the attack and by "fail[ing] to seek immediate medical care for the Plaintiff [. . ., who] sustained further emotional and bodily harm of which prompt medical attention would likely have prevented or lessened." Compl. ¶ 18. Wagner does not state specific allegations or claims against Warden Zych.[4] Instead, Wagner generally alleges that defendants, collectively, "interfered with and attempt[ed] to thwart" Wagner's pursuit of administrative remedies; contributed to Wagner's injuries; were "willfully deliberate"; treated the investigation of Wagner's attack as an "administrative inconvenience"; and failed to provide medical care to Wagner. Id. ¶¶ 12, 14, 22-26. Wagner demands $1,000,000.00 in damages for suffering "permanent and chronic injuries, including headaches, vision loss, and tinnitus"[5] as a result of the attack.

Wagner received some degree of assistance preparing this civil action from Elizabeth McKaveney, who is a legal assistant to attorney Brian O'Connor, and from Thomas J. Smith,

---

[4] Wagner explicitly identifies Warden Zych only to say Zych is an employee of the Bureau of Prisons ("BOP"). Compl. ¶ 2.
[5] Tinnitus is a ringing or buzzing sound in the ears.

who is Wagner's brother and an attorney in Houston, Texas.[6] On September 11, 2012, McKaveney emailed the Complaint for Wagner's signature to both Smith and Adam Setzer, who was Wagner's prison counselor. Smith replied to the email, telling Wagner, "Sign and fax the pleadings to the clerk's office. If you are allowed to call [Deputy Clerk] Brown[,] please do so and advise th[at] filings are being made." Wagner claims that he immediately signed the emailed Complaint and handed it to Counselor Setzer for faxing to the Clerk of Court.[7] The next day, September 12, 2012, Wagner received another copy of the Complaint which he then signed. However, Wagner admits that he did not give the second signed Complaint to prison officials for mailing to the court until September 13, 2012.[8]

## II.

Defendants argue that Wagner filed this action beyond the statute of limitations. A civil action filed pursuant to Bivens adopts the statute of limitations that the forum state uses for general personal injury cases. See, e.g., Owens v. Okure, 488 U.S. 235, 249-50 (1989); Wilson v. Garcia, 471 U.S. 261, 280 (1985). Virginia Code § 8.01-243(A) is the applicable two-year limitations period for general personal injury actions in Virginia. See Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir. 1983) (per curiam) (recognizing that Virginia's statute of limitations for general personal injury actions applies in a Bivens action about events occurring in Virginia).

However, federal law governs the question of when a cause of action accrues. Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975). A federal cause of action accrues when "the plaintiff has a complete and present cause of action" or when the plaintiff "can file suit and obtain relief."

---

[6] Brian O'Connor is admitted to practice before this court, and consequently, it is presumed that he and his staff are familiar with the court's rules.
[7] Counselor Setzer avers that he did not fax any documents for Wagner and would not have told Wagner that he could fax documents for him. Likewise, the Clerk of Court has no record of receiving a faxed Complaint. However, the dispute is not material because, as discussed infra, the court does not accept filings via fax.
[8] The Clerk received the mailed Complaint and docketed it on September 17, 2012.

Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (internal quotation marks omitted). Wagner's cause of action against Officer Barnette for being deliberately indifferent to the attack and need for medical care accrued on September 11, 2010, when Wagner allegedly knew Officer Barnette watched another inmate attack him in a locked cell without rendering any assistance. See, e.g., Farmer v. Brennan, 511 U.S. 825, 833 (1994) (discussing elements for a claim pursuant to the Eighth Amendment for a prison official's failure to protect an inmate from violence); Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (discussing elements for a claim pursuant to the Eighth Amendment for non-medical staff's deliberate indifference to a serious medical need). Thus, the two-year limitation period ended on Tuesday, September 11, 2012.

The court cannot consider the Complaint Wagner claims he gave to Counselor Setzer for faxing on September 11, 2012 to be the pleading that commenced this action. "A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. This court does not accept filings, either from attorneys or pro se parties, via fax. U.S. DIST. COURT. W. D. VA., ADMINISTRATIVE PROCEDURES FOR FILING, SIGNING AND VERIFYING PLEADINGS AND PAPERS BY ELECTRONIC MEANS (Apr. 2011) ("ADMINISTRATIVE PROCEDURES"), at 5; see W.D. Va. Gen. R. 7(a) (enabling the ADMINISTRATIVE PROCEDURES). Instead, the court accepts initial filings, like complaints, via the court's Case Management/Electronic Case Filing system, commonly known as "CM/ECF," or "United States mail, similar means, or deliver[y] in person to the Clerk's Office."[9] ADMINISTRATIVE PROCEDURES at 6. As an incarcerated, pro se litigant, Wagner was required to file the original, paper copy of the Complaint. Id. at 3, 7. Accordingly, the court's rules prohibited the Clerk from accepting a faxed copy of a pro se complaint for docketing, and,

---

[9] "Similar means" for physical delivery of original documents to the Clerk's Office include private mail companies like Federal Express and United Parcel Service. "Similar means" cannot be reasonably read to include transmitting copies of documents via fax.

even had it been received, the faxed Complaint cannot be deemed properly filed to commence this action on September 11, 2012.[10]

The Complaint that was docketed in this action is the copy that Wagner signed on September 12, 2012, but Wagner admits that he did not give that Complaint to a prison official for mailing via USP Lee's mail system until September 13, 2012. Because Wagner was incarcerated and mailed the Complaint through the prison's mail system, the court affords Wagner the benefit of the prison-mailbox rule and considers the action commenced on September 13, 2012. See Houston v. Lack, 487 U.S. 266 (1988) (describing the "prison-mailbox rule" as requiring federal courts to consider documents filed on the day incarcerated, pro se litigants hand documents to prison officials for mailing to federal courts and not on the day the documents are delivered).[11] Nonetheless, September 13, 2012, is beyond the expiration of the limitations period, and thus, Wagner did not file his suit within the two-year limitations period.

---

[10] Even if Wagner had the Complaint faxed due to Smith's, McKaveney's, or O'Connor's advice, such advice is not a basis to relieve Wagner from the limitations period. See, e.g., Rouse v. Lee, 339 F.3d 238, 248 (4th Cir. 2003) (recognizing "'a mistake by a party's counsel in interpreting a statute of limitations does not present the extraordinary circumstance beyond the party's control where equity should step in to give the party the benefit of his erroneous understanding'") (quoting Harris v. Hutchinson, 209 F.3d 325, 331 (4th Cir. 2000), and citing other circuits). To the extent Smith, McKaveney, or O'Connor may have acted as counsel to help prepare Wagner's litigation, they were Wagner's agents, whose actions are attributable to Wagner per standard principles of agency. See, e.g., Coleman v. Thompson, 501 U.S. 722, 753-54 (1991) (explaining that attorney error, short of a violation of the Sixth Amendment, is attributable to the client under standard principles of agency).

[11] Houston applied the prison-mailbox rule to a mailed notice of appeal in a civil action from an incarcerated pro se plaintiff. The Supreme Court justified the rule based on the unique circumstances facing inmates because they cannot "monitor the processing of their notices of appeal," "cannot personally travel to the courthouse to see that the notice is stamped 'filed,'" and are forced to "entrust the forwarding of [the] notice of appeal to prison authorities . . . who may have every incentive to delay." Houston, 487 U.S. at 270-71. Although neither the Supreme Court of the United States nor the Court of Appeals for the Fourth Circuit has decided whether the prison-mailbox rule applies to mailing a complaint arising under Bivens, several circuits have extended the rule to Bivens, FTCA, and other causes of action. See e.g., Sulik v. Taney Cnty., Mo., 316 F.3d 813, 815 (8th Cir. 2003) (collecting cases that extended the prison-mailbox rule). In Lewis v. Richmond City Police Department, 947 F.2d 733 (4th Cir. 1991), the Court of Appeals for the Fourth Circuit extended the Houston prison-mailbox rule to situations when a Virginia inmate hands a complaint brought pursuant to 42 U.S.C. § 1983 to prison officials for mailing to a federal court. The reasoning in Lewis is equally applicable to this Bivens action, and the court will permit Wagner to benefit from the prison-mailbox rule for the Complaint mailed in compliance with the court's rules. However, the court is not aware of, and Wagner has not cited to, any case that broadens the prison-mailbox rule described in Houston to apply to a complaint delivered to a prison official for faxing to a federal court in contravention of that court's rules and based on the erroneous advice of an attorney who did not enter an appearance on the plaintiff's behalf.

Because the Virginia statute of limitations applies, the court is "obligated . . . to apply [Virginia]'s rule for tolling that statute of limitations." Scoggins v. Douglas, 760 F.2d 535, 537 (4th Cir. 1985); see Wade v. Danek Med., Inc., 182 F.3d 281, 289 (4th Cir. 1999) (holding Virginia's equitable tolling rule applies when Virginia's statute of limitations is used in federal question and diversity actions). Virginia's statute of limitations may not be tolled, "or an exception applied, in the absence of a clear statutory enactment to such effect[,]" Arrington v. Peoples Security Life Insurance Co., 250 Va. 52, 55-56, 458 S.E.2d 289, 290-91 (1995), "unless under certain extraordinary circumstance, wherein the positive and plain requirements of an equitable estoppel preclude" applying the statute of limitations, Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc., 221 Va. 81, 85, 266 S.E.2d 887, 889 (1980). See VA. CODE § 8.01-229 (permitting tolling of a limitations period in very limited circumstances). "[A]ny doubt must be resolved in favor of the enforcement of the statute [of limitations]." Arrington, 250 Va. at 55, 458 S.E.2d at 290-91.

Wagner does not establish that any of the very limited circumstances described in Virginia Code § 8.01-229 apply to statutorily toll the limitations period.[12] Furthermore, equitable tolling under Virginia law is not appropriate because Wagner has not presented any evidence that a defendant misrepresented or concealed a material fact for the purpose of masking a cause of action. See Boykins Narrow Fabrics Corp., 221 Va. at 85, 266 S.E.2d at 890 (requiring this element for equitable tolling to be proven by clear, precise, and unequivocal evidence). To the extent Wagner argues that the limitations period should be equitably tolled

---

[12] Wagner avers that he did not get a second copy of the Complaint until September 12, 2012, because he signed the first copy and gave it to Counselor Setzer for faxing. Had Wagner requested that the prison mail the copy of the Complaint he claims he signed on September 11, 2013, it would be deemed timely filed. Instead, Wagner relied on Smith's instruction to fax the Complaint, and Wagner's reliance on erroneous advice cannot be imputed to a prison official for accepting the Complaint for faxing per Wagner's instruction. Cf. VA. CODE § 8.01-229(D) (tolling the statute of limitations when a defendant obstructs the filing of an action).

while he pursued administrative remedies, no such tolling provision applies to Virginia Code § 8.01-243(A).[13] Accordingly, the court finds that Wagner commenced this action beyond the limitations period, no tolling provision applies, and defendants are entitled to summary judgment.

### III.

Although Wagner specifically alleges that Officer Barnette violated the Eighth Amendment by being deliberately indifferent to the attack and need for medical care, Wagner does not state such specific allegations or claims against Warden Zych. For this reason as well, the claim against Warden Zych is not actionable.

---

[13] Virginia Code § 8.01-243.2 is another statute of limitations for inmate-plaintiffs confined in state or local-government correctional facilities suing about prison conditions, and it also requires inmates to exhaust available administrative remedies before filing suit. Accord 42 U.S.C. § 1997e(a) (requiring inmates to exhaust available administrative remedies). It is inconsequential that Virginia Code § 8.01-243.2 fixes the limitations period for prisoners' suits about prison conditions as either one year after the action accrues or within six months after all administrative remedies are exhausted. This separate statute of limitations has no bearing on § 8.01-243(A) or tolling under § 8.01-229. Furthermore, § 8.01-243.2 applies to prisoners in state and local facilities, not federal facilities like USP Lee.

In Roberts v. Saunders, No. 7:02-cv-00808, 2003 WL 23678921, at *1 (W.D. Va. Jan. 10, 2003) (Turk, J.), the court granted a Rule 59(e), Fed. R. Civ. P., motion to reconsider the dismissal of a complaint as barred by Virginia Code § 8.01-243(A). Citing a federal case interpreting Illinois law, the Roberts court equitably tolled the statute of limitations for the one-month period the incarcerated, pro se plaintiff spent exhausting administrative remedies. Although the court reopened the action and considered it timely filed, it immediately dismissed the complaint before service for failing to state a claim upon which relief may be granted.

In contrast, the court in Williams v. Bays, No. 7:07-cv-00019, 2007 WL 4553701, at *3 n.4 (W.D. Va. Dec. 19, 2007) (Urbanski, M.J.), determined that no statute or case law requires tolling Virginia Code § 8.01-243(A) for the time an incarcerated plaintiff pursued administrative remedies. Also, the court in Lujan v. Teters, No. 7:06-cv-00748, 2007 WL 4376149, at *5 (W.D. Va. Dec. 14, 2007) (Sargent, M.J.), concluded that it is not appropriate to equitably toll Virginia Code § 8.01-243(A) when an incarcerated plaintiff unduly delays filing the action after exhausting administrative remedies.

The court finds Williams and Lujan to be more applicable to this action than Roberts. First, the authority relied upon in Roberts, Johnson v. Rivera, 272 F.3d 519 (7th Cir. 2001), interpreted an Illinois statute as requiring the court to toll the applicable Illinois statute of limitations while the incarcerated plaintiff pursued administrative remedies with state prison officials before filing an action pursuant to 42 U.S.C. § 1983. The court has not found, and Wagner does not cite, any mandatory authority holding that Virginia Code § 8.01-243(A) should be tolled for the time a federal prisoner, who later files a Bivens action, pursued administrative remedies with the BOP. Second, Wagner received the last response to his grievance in October 2011, delayed trying to file this action until the last day of the limitations period, and relied on erroneous advice to fax the Complaint instead of mailing it. Cf. Kansas v. Colorado, 514 U.S. 673, 687 (1995) ("[E]quity aids the vigilant and not those who slumber on their rights."). Accordingly, the court will not equitably toll Virginia Code § 8.01-243(A) for the time Wagner pursued administrative remedies.

Wagner generally alleges that defendants, collectively, "interfered with and attempt[ed] to thwart" Wagner's pursuit of administrative remedies; contributed to Wagner's injuries; were "willfully deliberate"; treated the investigation of Wagner's attack as an "administrative inconvenience"; and failed to provide Wagner medical care. Compl. ¶¶ 12, 14, 22-26. Wagner does not provide evidence to support such speculative claims against Warden Zych. See Fed. R. Civ. P. 56(c)(4) (requiring an affidavit or declaration to oppose a motion for summary judgment to be made on personal knowledge, set out admissible facts, and show that the affiant or declarant is competent to testify on the matter); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (requiring a plaintiff's basis for relief to consist of more than labels and conclusions). For example, Wagner does not allege that he informed Warden Zych about the instant claims, Warden Zych knew that Wagner was in a fight with another inmate and needed medical care, Warden Zych failed to protect Wagner, Warden Zych was involved in any administrative review, or Warden Zych's specific act or omission injured Wagner. See, e.g., Farmer, 511 U.S. at 833 (discussing elements for a claim pursuant to the Eighth Amendment for a prison official's failure to protect an inmate from violence); Miltier, 896 F.2d at 854 (discussing elements for a claim pursuant to the Eighth Amendment for a non-medical staff's deliberate indifference to a serious medical need). Wagner cannot maintain a successful Bivens claim against Warden Zych as a supervisor because he fails to describe Warden Zych's personal fault based on his own conduct or another's conduct in execution of his policies or customs. See, e.g., Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978) (recognizing supervisory liability may not be predicated on respondeat superior). Accordingly, Warden Zych is entitled to qualified immunity and summary judgment. See Harlow v.

Fitzgerald, 457 U.S. 800, 818 (1982) (permitting qualified immunity to a government official if a plaintiff fails to state a claim upon which relief may be granted).

IV.

For the foregoing reasons, the court grants defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and denies Wagner's motion for discovery.[14]

Entered: February 21, 2014

*/s/ Michael F. Urbanski*
Michael F. Urbanski
United States District Judge

---

[14] Wagner's motion for discovery requests email, fax, and phone logs to support his arguments about faxing the Complaint, permission to correspond with other inmates, and video recordings. The motion for discovery is denied because the court accepts as true Wagner's allegations about faxing and mailing the Complaint, and none of his requests are relevant to the disposition of the action. See Behrens v. Pelletier, 516 U.S. 299, 308 (1996) (recognizing discovery should not be permitted until a court resolves the application of qualified immunity).